UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DANIEL GRIFFITH and DIANA
GRIFFITH, Individually and as Husband and
Wife,

                        Plaintiffs,

                                                        **Hon. Hugh B. Scott**


                                                        **11CV761S**

                                                        **Report**
                v.                                      **&**
                                                        **Recommendation**



GOODYEAR DUNLOP TIRES NORTH
AMERICA, LTD.,

                        Defendant.


        This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket No. 77; cf. Docket No. 5 (initial, non-dispositive referral Order)).  The instant matter

before the Court is the motion of defendant (Docket No. 119)[1] for summary judgment.  A

response initially was due July 17, 2015, and any reply was due August 5, 2015 (Docket

No. 120); plaintiffs filed a timely response (Docket No. 121) and defendant replied (Docket No.

122).  This Court then ordered briefing on the applicable jurisdiction's substantive law for this

case, due by October 2, 2015 (Docket Nos. 123, 125; see Docket Nos. 126 (plaintiffs), 127

(defendant)).  All parties declare that California substantive law applies to this action (Docket

Nos. 126, 127), and this Court ordered the parties to brief the issues under California law by

October 23, 2015 (Docket No. 128; see Docket Nos. 129 (plaintiffs), 130 (defendant)), and the

---

[1]Docket citations without a case name refer to items in Griffith.

underlying motion was deemed submitted as of October 23, 2015.  Defendant then filed a motion

for leave to file a supplemental memorandum addressing plaintiff's new arguments (Docket

No. 131); that motion is **denied**.

Defendant is also the defendant in a similar action, <u>Blundon v. Goodyear Dunlop Tires

North America</u>, Case No. 11CV990 (hereinafter "<u>Blundon</u>"), and plaintiffs there are represented

by the same attorney as in the present case.  This Court entered there parallel scheduling Orders

to the schedule in this case.  Defendant also made a similar summary judgment motion in

<u>Blundon</u> (<u>Blundon</u>, Docket No. 129; <u>see</u> <u>Blundon</u>, Docket No. 130, briefing Order).  A separate

Report and Recommendation will be issued in <u>Blundon</u> to recommend formally the disposition

of the summary judgment motion filed in that case.

## BACKGROUND

Both actions arose from motorcycle accidents where the rear tire of the plaintiffs'

motorcycles blew out.  Both actions were removed from New York State Supreme Court after

defendant answered in state court (Docket No. 1; <u>Blundon</u>, Docket No. 1).

According to defendant's Statement of Facts (Docket No. 119) and accepting uncontested

facts stated therein as true, <u>see</u> W.D.N.Y. Loc. Civ. R. 56(a)(2), this product liability action was

commenced on July 13, 2011 (Docket No. 119, Def. Statement ¶ 3), arising from a motorcycle

accident on July 29, 2009, when plaintiff Daniel Griffith operated a Harley Davidson with a rear

tire Dunlop D402, tire number MU85B16SW (the "tire") (<u>id.</u> ¶ 4).  Plaintiff Diana Griffith was a

passenger riding the motorcycle (<u>id.</u> ¶ 5).  The accident occurred on Interstate 5 in Colusia

County, California (<u>id.</u> ¶ 6).  Plaintiffs allege that the tire was defective and failed and caused

their motorcycle accident (<u>id.</u> ¶ 7).

Defendants describe simply plaintiffs' causes of action, but plaintiff responds with more detailed assertions of their claims (compare id. ¶¶ 8-13 with Docket No. 121, Pls. Response to Def. Statement ¶¶ 8-13).  For example, defendant argues that plaintiffs alleged, in the first cause of action, design defect and negligent design (Docket No. 119, Def. Statement ¶ 8) for both plaintiffs (see Docket No. 1, Notice of Removal, Ex. A, state Complaint ¶¶ 9-14), but plaintiffs note they also alleged negligent manufacture of the tire, negligent inspection, and negligent testing resulting in an unsafe and defective tire being marketed and sold to the public generally and to plaintiffs specifically (Docket No. 121, Pls. Response to Def. Statement ¶ 8).  Plaintiffs next state that their second cause of action includes claims of negligent manufacture of the tire and its parts, negligent inspection, negligent and defective workmanship resulting in an unsafe and defective tire being placed into the stream of commerce to the public generally, and plaintiffs specifically (Docket No. 121, Pls. Response to Def. Statement ¶ 9), as well as the design defect and negligent design noted by defendant (Docket No. 119, Def. Statement ¶ 9) as to plaintiff Diana Griffith (Docket No. 1, Notice of Removal, Ex. A, Compl. ¶¶ 16-18).  The third and fourth causes of action alleged strict liability for manufacturing defect (Docket No. 121, Pls. Response to Def. Statement ¶¶ 10-11), as well as strict liability for design defect (Docket No. 119, Def. Statement ¶¶ 10-11) as to Daniel Griffith for the third cause of action (Docket No. 1, Notice of Removal, Ex. A, Compl. ¶¶ 20-22) and Diana Griffith for the fourth cause of action (id. ¶¶ 24-26).  Plaintiffs state that the fifth and sixth causes of action alleged breach of warranty including claims for both breach of express and implied warranty (as to Daniel Griffith in the fifth cause of action, Docket No. 1, Notice of Removal, Ex. A, Compl. ¶¶ 28-30, and as to Diana Griffith in the sixth cause of action, id., ¶¶ 32-34), but plaintiffs agree that the express warranty breach claim is

3

withdrawn (Docket No. 121, Pls. Response to Def. Statement ¶¶ 12-13; see Docket No. 119, Def.

Statement ¶¶ 12-13).

In their answers to Interrogatories, plaintiffs conceded that they are not asserting a claim

based upon design defect (Docket No. 119, Def. Statement ¶ 14).  In these answers, plaintiffs

also asserted claims for failure to warn (id. ¶ 15), with that claim as "the tire was defective due to

inadequate warning or instruction at the time of marketing because [defendant] knew or, in the

exercise of reasonable care, should have known about the risk that is associated with the tire and

defective manufacturing of the tire and failed to provide any warning concerning this risk" (id.

¶ 16).  Plaintiffs supplemented this Interrogatory answer by claiming that defendant failed to

"properly provide warnings on the subject replacement D402 rear tire including that the load

carry capacities of the tire were not demonstrable and/or particular in that to the extent that there

were any advises [sic], they failed to inform plaintiff's [sic] and account for and calculate the

vehicle gross weight, multiple tires and weight distribution" (id. ¶ 17).  They further

supplemented this answer by stating that defendant failed to warn on the replacement D402 tire

"of load carrying capacities of the tire; that any weight recommendations were inadequate in that

they did not advise nor warn relative to the vehicle gross weight, multiple tires and weight

distribution.  Upon information and belief, there is nothing provided by [defendant] that would

have given any clear indication of the weight limit for the D402 tire on this particular Harley

Davidson motorcycle" (id. ¶ 18).

Plaintiffs purchased the tire as a replacement tire on October 14, 2007 (id. ¶ 19).  The

parties dispute whether maintenance documentation was provided to plaintiffs when they

purchased the tire (compare id. ¶ 20 (tire would have been provided with maintenance literature),

Ex. G with Docket No. 121, Pls. Response to Def. Statement ¶¶ 20 (from their deposition testimony, plaintiffs did not receive any documentation), 21).  Defendant claims that the "Maintenance and Tire Care Booklet" (Docket No. 119, Ex. G) warned of the maximum load capacity for the tire (Docket No. 119, Def. Statement ¶ 21; but see Docket No. 121, Pls. Response to Def. Statement ¶ 21 (deny receiving this material)). The sidewall of the tire was marked with warnings and instructions (Docket No. 129, Def. Statement ¶ 22).  The owner's manual for the Harley Davidson also included instructions and warnings concerning the gross vehicle weight rating and tire inflation pressure (id. ¶ 23); but plaintiffs claim that the original owner's manual for the motorcycle was not recoverable (Docket No. 121, Pls. Response to Def. Statement ¶ 23).  Defendant argues that plaintiffs fail to identify a specific warning that should have been issued (Docket No. 119, Def. Statement ¶ 24), but plaintiffs argue that, due to the high number of D402 tire blow-outs, warnings should have been given to defendant's customers, suppliers and distributors concerning a possible manufacturing/design defect associated with that tire (Docket No. 121, Pls. Response to Def. Statement ¶ 24).  Plaintiffs also alleged that there was no information provided by defendant which would have given any clear indication of the weight limit for the D402 tire (id.).

Defendant claims that plaintiffs have not disclosed an expert witness qualified to speak to the alleged lack of warning and/or inadequacy of existing warnings (compare Docket No. 119, Def. Statement ¶ 25 with Docket No. 121, Pls. Response to Def. Statement ¶ 25 (pointing to Gary Derian, P.E., as expert)).  Plaintiffs admit that they do not possess any documents that evidence an express warranty by defendant (Docket No. 119, Def. Statement ¶ 26).

Plaintiffs, in their seventh (for Daniel Griffith) and eighth (for Diana Griffith) causes of action, allege loss of companionship claims for the services, society, companionship, and consortium of the other spouse (Docket No. 1, Notice of Removal, Ex. A, ¶¶ 36-37, 39-40). Plaintiffs' Interrogatory answers claimed the value of post household services of $55,860 lost as a result of the accident (Docket No. 119, Def. Statement ¶¶ 27, 28) but plaintiffs failed to produce receipts or other materials to document these expenses (id. ¶ 29). They produced an economist who testified that he did not calculate a claim for past loss of household services (id. ¶ 30). The parties do not specify the particular amount of loss for either plaintiff on these two causes of action.

*Defendant's Arguments*

In its motions for summary judgment, defendant argues that plaintiffs' respective causes of action for design defect should be dismissed since plaintiffs announced in their Interrogatory answers that they are not claiming a design defect (Docket No. 119, Def. Memo. at 3). Defendant argues that plaintiffs' failure to warn causes of action (not alleged in the Complaint) should be dismissed since these causes are duplicate of plaintiffs' manufacture defect claims (id. at 3-5), and that there was no evidence that the accidents were caused by lack of product warnings (id. at 6-10). Next, defendant asserts that plaintiffs' causes of action for breach of express warranty should be dismissed because plaintiffs failed to produce evidence to support these claims (id. at 10-11). Finally, plaintiffs' claims for loss of past household services should be dismissed because they failed to produce receipts or other evidence for these expenses (id. at 12).

*Plaintiffs' Response*

Plaintiffs in each case make similar arguments in response to defendant's motions. Plaintiffs focus on their failure to warn claims, contending that the sufficiency of warnings presented here is a fact-based inquiry, hence precluding summary judgment (Docket No. 121, Pls. Response at 3).

*Defendant's Reply*

Defendant counters that plaintiffs now concede that they are not pursuing design defects, breach of express warranty, or past lost household services claims (Docket No. 122, Def. Reply at 2). Defendant argues that plaintiffs' failure to warn claims should be dismissed because they have not set forth a specific warning that should have been provided but was not, and that the failure to warn claim is duplicative of the manufacturing defect claim (id. at 2, 3, 4). Plaintiffs do not contest that the warnings either were provided or explained how the warnings were inadequate (id. at 2, 4-5, 5-6).

*Griffith* Under California Law

Applying California law to the claims and defenses at issue in this motion, plaintiffs contend that their failure to warn and design defect claims are proper and sustainable under California law (Docket No. 130, Pls. Memo. at 1), Lucas v. City of Visalia, 726 F. Supp.2d 1149, 1154 (E.D. Cal. 2010), withdrawing their earlier concession of the design defect claims (id. at 1-2). Relying upon the "consumer expectations test" for design defect (discussed below), plaintiffs argue that the tire was to be used "on a large motorcycle that is seen all over the United States with large people on it," using those tires as original equipment on that vehicle, with the expectation that a couple (sometimes an obese couple) would ride on these tires (id. at 10). They

counter that defendant's underinflation argument is a question of misuse and a fact issue for the jury (id. at 10), <u>Mariscal v. Graco, Inc.</u>, 52 F. Supp. 3d 973, 987 (N.D. Cal. 2014).  Plaintiffs note that defendants did not move to dismiss their manufacturing defect claims (id. at 1, 11).

As for their failure to warn claims, plaintiffs contend that defendant failed to properly warn them of the weight limitations of the tire (id. at 4-10).  Applying the principles set forth in <u>Cavers v. Cushman Motor Sales, Inc.</u>, 95 Cal. App. 3d 338, 347-48, 157 Cal. Rptr. 142, 148-49 (1979), plaintiffs state that the normal expectations of tire consumers is that properly inflated tire would support a rider and passenger (id. at 4-5); the use of a tire is relatively simple (id. at 5-6). What defendant fails to disclose is the specific weight totals that a tire can endure with a fully loaded motorcycle and riders (id. at 6).  As for the magnitude of the danger and the likelihood of injury, plaintiffs point out that tire deflation at highway speeds increases the magnitude of danger (id. at 7).  On the feasibility and beneficial effect of including a warning, plaintiffs claim that warnings could be imprinted on the tire walls (id.).  They also claim that they alleged a failure of defendant to warn against overdefelection and underinflation (id. at 7-8), with the quality of such warnings being an issue of fact (id. at 8).  They argue that the owner's manual warnings are not sufficient, since they deal only with the risks to handling and stability during operation and not upon the amount of inflation necessary for proper operation of the tire (id. at 8-9)

Defendant argues that their failure to warn claims should be dismissed because plaintiffs fail to set forth the specific warnings that ought to have been provided (Docket No. 129, Def. Memo. at 2, 3), <u>see</u> <u>Mountain Club Owner's Ass'n v. Graybar Elec. Co.</u>, No. CIV 2:13-1835 WBS K, 2014 WL 130767, at *3 (E.D. Cal. Jan. 14, 2014), in particular that the disclosure was made in responding to its motion for summary judgment by plaintiffs' expert rather than in

plaintiffs' interrogatory answers (id. at 4). Defendant reiterates that the failure to warn claim is duplicative of their manufacturing defect claim (id. at 2, 4-5). To defendant, plaintiffs either failed to show how inadequate the warnings they received were or generally plead a failure to warn claim (id. at 2-3); instead, plaintiffs offer to rebut a defense by arguing that the warnings were insufficient (id. at 5). If this Court reaches whether defendant provided relevant warnings, defendant alternatively contends that plaintiffs' arguments should be rejected (id. at 6). Plaintiffs confuse the information provided with the tire with that provided with the motorcycle (id.). The individual tire did not discuss weight distribution between tires because that depended upon the specifications and characteristics of the particular motorcycle (id.). Defendant provided warning to the user not to exceed the maximum load indicated on the sidewall of the tires or the vehicle capacity load found on the owner's manual for the motorcycle (id.). Defendant reiterates that plaintiffs are no longer pursuing claims for design defect, breach of express warranty, and past lost household expenses (id. at 2)[2].

## DISCUSSION

### I.     Summary Judgment Standards

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a) (effective Dec. 2010). The party seeking summary judgment has the burden to demonstrate that no genuine

---

[2]Defendant's proposed supplemental memorandum, Docket No. 131, addresses grounds for rejecting plaintiffs' attempt to resuscitate their abandoned design defect claims.

issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Ford, supra, 316 F.3d at 354.  "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997). While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002); see also Demutis v. Sally Beauty Supply LLC, No. 09CV92, 2011 WL 1198197, at *3 (W.D.N.Y. Feb. 17, 2011) (Scott, Mag. J.) (Docket No. 119, Def. Memo. at 2-3).  The opponent to summary judgment may argue that he cannot respond to the motion where it shows, by affidavit, "that, for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d).

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2) (effective Jan. 1, 2011).  The movant is to submit facts in which there is no genuine issue, id.

R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is

contended that there exists a genuine issue to be tried, id. R. 56(a)(2).  Each numbered paragraph

in the movant's statement will be deemed admitted unless specifically controverted by a

correspondingly numbered paragraph in the opponent's statement, id.  Each statement of material

fact is to contain citations to admissible evidence to support the factual statements and all cited

authority is to be separately submitted as an appendix to that statement, id. R. 56(a)(3).

II.      Choice of Law

         The parties initially applied New York law to these cases.  This Court, however, sought

additional briefing on which jurisdiction's law applies to these cases (Docket No. 123; see

Blundon, Docket No. 133).  The accidents occurred in California (for Griffith) and Arizona (for

Blundon); plaintiffs in Griffith are citizens of California (Docket No. 1, Notice of Removal, at

1), whereas plaintiffs in Blundon are citizens of New Hampshire (Blundon, Docket No. 1, Notice

of Removal at 1).  Defendant in both cases is an Ohio corporation with its principal place of

business in Ohio (e.g., Docket No. 1, Notice of Removal, at 2) and authorized to do business in

New York with offices in Tonawanda, New York, where the tires at issue were manufactured

(id., Ex. A, Compl. ¶¶ 2, 3, 6).  Plaintiffs commenced their actions in New York State Supreme

Court and these cases were removed to this Court (see id.).  The only apparent connection with

New York is the fact that defendant is amenable to suit in this state due to its Tonawanda plant

(the manufacturing site for the tires).

         In a diversity jurisdiction action, this Court initially must apply the substantive law of our

forum state, New York, see Erie R.R. v. Tompkins, 304 U.S. 64 (1983); Ocean Ships, Inc. v.

Stiles, 315 F.3d 111, 116 n.4 (2d Cir. 2002), including its choice of law regime, Klaxon v.

<u>Stentor</u>, 313 U.S. 487 (1941).  In personal injury actions, New York generally applies the law of the jurisdiction in which the injury occurred.  <u>See</u> <u>Cooney v. Osgood Machinery, Inc.</u>, 81 N.Y.2d 66, 595 N.Y.S.2d 919 (1993); <u>Neumeier v. Kuehner</u>, 31 N.Y.2d 121, 335 N.Y.S.2d 64 (1972).  "New York's current choice-of-law rules require the court to consider the following three elements:  the domicile of the plaintiff, the domicile of the defendant, and the place where the injury occurred."  <u>Lucas v. Lalime</u>, 998 F. Supp. 263, 267 (W.D.N.Y. 1998) (Heckman, Mag. J., R&R, adopted by Arcara, J.).  Where more than one element is in the same state, that state's law should apply.  <u>Id.</u>; <u>Datskow v. Teledyne Continental Motors</u>, 807 F. Supp. 941, 943 (W.D.N.Y. 1992) (Larimer, J.)  Under New York choice of law rules, however, "the first step in any case presenting a potential choice of law is to determine whether there is an actual conflict between the laws of the jurisdiction involved."  <u>Matter of Allstate Ins. Co.</u>, 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 905 (1993).

Initially, no party has presented the laws of the alternative jurisdictions that might be applicable to determine whether a conflict exists.  Under New York's choice of law procedure, those relevant jurisdictions in this case would be Ohio (defendant's home domicile) or California (plaintiffs' jurisdiction and the site of accident).  In this case, the parties agreed that California law applies (Docket Nos. 126, 127), but defendant argues that California substantive law has little impact on its motion for summary judgment (Docket No. 127, Def. Letter at 8).  The parties then briefed the substantive law of California on the issues in this motion (Docket Nos. 129 (plaintiffs), 130 (defendant)).

III.    Relevant California Substantive Law

A.    Failure to Warn under California Law

California law recognizes strict liability for three types of product defects, manufacturing

defects, design defects, and warning defects, <u>Anderson v. Owens-Coring Fiberglass Co.</u>,

53 Cal.3d 987, 995, 810 P.2d 549 (1991); <u>Altman v. HO Sports Co.</u>, CIV. No. 1:09-1000 AWI

SMS, 2009 WL 4163512, at *6 (E.D. Cal. Nov. 23, 2009).

Under California law, "a plaintiff must allege 'that a manufacturer or distributor did not

warn of a particular risk for reasons which fell below the accepted standard of care,'" <u>Mountain

Club</u>, <u>supra</u>, 2014 WL 130767, at *3, quoting <u>Carlin v. Superior Court</u>, 13 Cal. 4th 1104, 1112,

920 P.2d 1347 (1996).  "To state a plausible claim for failure to warn, a complaint should at least

identify which danger was not warned against, that the danger was substantial, that the danger

was not readily recognizable to an ordinary customer, that the manufacturer knew or should have

reasonably known of the danger, and causation," <u>Altman</u>, <u>supra</u>, 2009 WL 4163512, at *9;

<u>Mountain Club</u>, <u>supra</u>, 2014 WL 130767, at *3.

B.    California Design Defect Law

Under a design defect theory, "a design if defective in one of two ways.  First, under the

'consumer expectations test,' a product's design is defective if it has failed to perform as safely

as its ordinary consumers would expect when used in an intended or reasonably foreseeable

manner.  <u>Barker v. Lull Engineering Co.</u>, 20 Cal.3d 413, 430, . . . 573 P.2d 443 (1978); <u>Karlsson

[v. Ford Motor Co.</u>, 140 Cal. App. 4th 1202, 1208, 45 Cal. Rptr. 265 (2006)]; <u>see also</u> <u>Soule [v.

General Motors Corp.</u>, 8 Cal.4[th] 548, 562, 882 P.2d 298 (1994)].  Second, under the 'risk-benefit

test,' a product's design is defective if the design embodies 'excessive preventable danger,' that

13

is, the risk of danger inherent in the design outweighs the benefits of such design.  Barker,

20 Cal.3d at 430,  . . . 573 P.2d 443; Ford v. Polaris Industries, Inc., 139 Cal. App. 4th 755, 766

(2006) . . . ," Lucas, supra, 762 F. Supp. 2d 1154 (some citations omitted).

IV.    Application

First, the parties agree (from the acceptance of defendant's Statement of Material Facts

by plaintiffs on this point) that plaintiffs' express warranty claim under so much of the fifth and

sixth causes of action is withdrawn (Docket No. 119, Def. Statement ¶¶ 12-13; see Docket

No. 121, Pls. Response to Def. Statement ¶¶ 12-13) and **judgment should be granted to

defendant on that claim**.  The implied warranty claims under these causes of action, however,

remain (Docket No. 121, Pls. Response to Def. Statement ¶¶ 12-13).

A.    Plaintiffs' Design Defect Causes of Action

In answering their respective Interrogatories, plaintiffs initially denied that they asserted a

design defect cause of action, although design defect is alleged in their first, second, third, and

fourth causes of action.  Now applying California law, plaintiffs purport to reassert these claims

(Docket No. 130, Pls. Memo. at 1-2).

Plaintiffs now contend that the tire was original equipment on the motorcycle (Docket

No. 130, Pls. Memo. at 10); although they did not dispute defendant's Statement of Fact that the

tire was replacement equipment (Docket No. 119, Def. Statement ¶ 19, admitted, Docket No. 121

¶ 19).

In this reassertion of these claims, plaintiffs have not provided evidence to support them,

since their earlier interrogatory answers were not withdrawn to assert the evidentiary basis for

this claim (such as an alternative design that should have been made for a motorcycle tire that

was to be ridden on a larger motorcycle with "larger" riders).  Defendant did not address the plaintiffs' change in position regarding this claim.  Nevertheless, as to these particular claims, defendant's motion (Docket No. 119) should be **granted** and these claims **dismissed** because plaintiff have not provided evidentiary support for those claims.  Defendant's motion for leave to supplement its briefing on this issue (Docket No. 131) is **denied** as unnecessary given this Recommendation.

  B.  Plaintiffs' Failure to Warn Causes of Action

  Next, defendant argues that plaintiffs' failure to warn causes of action should be dismissed.  Plaintiffs respond that they either did not receive the warnings or the warnings now identified by defendant (including those on the tires themselves) were insufficient.  Plaintiffs conclude that this raises a material issue of fact that should preclude summary judgment. (Docket No. 121, Pl. Memo. at 2-4).  But, as defendant argues, plaintiff has not shown the alternative language that should have been provided as the warning or indicated what should have been warned, only contending now that the warnings should have addressed the weight the tires could bear and the effect of underinflation.  First, plaintiffs never raised failure to warn as a distinct claim in their Complaint.  California law recognizes three types of strict products liability, Anderson, 53 Cal. 3d at 995, 810 P.2d 549; here plaintiffs alleged only two of the three types in their pleadings.  Plaintiffs wish to stretch their discovery responses to allege the third type of strict product liability from a defective warning.  All that was presented in this record is plaintiffs' Interrogatory answers generally stating that the warning was deficient.  Defendant's motion for summary judgment (Docket No. 119) as to plaintiffs' purported failure to warn claims should be **granted**.

C.      Plaintiffs' Breach of Express Warranty Causes of Action

Given that plaintiffs agree that they withdrew their fifth and (according to plaintiffs) sixth

causes of action breach of express warranty claims (see, e.g., Docket No. 130, Pls. Memo. at 1),

defendant **should be granted its motion (Docket No. 119) for judgment dismissing those**

**claims.**

D.      Plaintiffs' Claims for Lost Household Services

Finally, defendant argues that plaintiffs have not substantiated their loss of past

household services claim for their seventh and eighth causes of action.  Plaintiffs again do not

contest this point (see, e.g., Docket No. 130, Pls. Memo. at 1).  Defendants make an evidentiary

argument that plaintiffs failed to present evidence to support the claim.  On these claims,

defendant's motion (Docket No. 119) **should be granted** absent plaintiffs' contention that they

were somehow unable to refute this argument or needed additional discovery to contest it (which

they do not assert).

III.    What Is Left Following These Motions

If this Report is adopted without amendment, what remains for further disposition and

eventual trial is plaintiffs' breach of implied warranty (in the fifth and sixth causes of action);

plaintiffs' second cause of action for manufacture defect; their strict liability claims for

manufacturing defect contained in the third and fourth causes of action.

**CONCLUSION**

Based upon the above, it is recommended that defendant's motion (in effect for partial)

summary judgment (Docket No. 119) as to the claims asserted above be **granted**.  In light of the

above Recommendations, defendant's motion for leave to file supplemental motions (Docket No. 131) is **denied**.


Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and

17

recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

      SO ORDERED.

                                   _/s/ Hugh B. Scott_
                                       Hon. Hugh B. Scott
                             United States Magistrate Judge

Dated: Buffalo, New York
       November 3, 2015