UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DANIEL GRIFFITH and DIANA
GRIFFITH,
Individually and as Husband and Wife,

                              Plaintiffs,

                                                    **Hon. Hugh B. Scott**


                                                    **11CV761S**

                                                    **Report**
                                                    **&**
                v.                                  **Recommendation**


GOODYEAR DUNLOP TIRES NORTH
AMERICA, LTD.,

                              Defendant.

---

    This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket No. 77).  The instant matter before the Court is the latest motion of defendant Goodyear

Dunlop Tires North America[1] (Docket No. 144)[2] for partial summary judgment seeking

dismissal of two claims.  This motion is similar to defendant's motion for partial summary

judgment in the parallel case <u>Blundon v. Goodyear Dunlop Tires North America</u>,

Case No. 11CV990 ("<u>Blundon</u>"), Docket No. 154.

---

    [1]Defendant noted the proper corporate parent name is now Sumitomo Rubber USA, LLC,
<u>see</u> Docket No. 143.  For consistency with prior proceedings, however, defendant will be
referred to by its former name, <u>see also</u> Docket Nos. 144, Def. Memo. at 1 n.1; 148, Def. Reply
Memo. at 1 n.1.

    [2]In support of its motion, defendant submits its attorney's Declaration with exhibits,
Docket No. 144, and reply papers noted below.

Defendant initially moved for summary judgment in this case on June 25, 2015 (Docket No. 119). This Court rendered a Report and Recommendation (Docket No. 132) which recommended granting summary judgment to defendant. That recommendation was set aside by Judge William Skretny to allow plaintiffs to conduct further discovery on one cause of action and without prejudice to defendant renewing the dispositive motion following that discovery (Docket No. 139), similar to the remedy ordered in <u>Blundon</u>, <u>see</u> <u>Blundon</u>, <u>supra</u>, Case No. 11CV990, Docket No. 149. Since Judge Skretny did not reject the facts found in the <u>Griffith</u> Report, this Court will continue to rely upon those findings where not inconsistent with the present contentions of the parties. Familiarity with that Report, Judge Skretny's Order, and prior proceedings had herein are presumed.

Responses to defendant's present motion were due by July 13, 2016, with any reply due by August 1, 2016 (Docket No. 145). Plaintiffs submitted their opposition Memorandum of Law and their attorney's declaration with exhibits (Docket No. 147). Defendant replied with its Reply Memorandum (Docket No. 148). The motion was deemed submitted (without oral argument) on August 1, 2016.

## BACKGROUND

Both this action and <u>Blundon</u> arose from motorcycle accidents where the rear tires (manufactured by defendant) of the plaintiffs' respective motorcycles blew out. Both actions were removed from New York State Supreme Court after defendant answered (Docket No. 1; <u>Blundon</u>, Docket No. 1).

According to defendant's initial Statement of Facts (Docket No. 119) and accepting uncontested facts stated therein as true, <u>see</u> W.D.N.Y. Loc. Civ. R. 56(a)(2), this product liability

2

action arose from a motorcycle accident on July 29, 2009, when plaintiff Daniel Griffith operated a Harley Davidson with a rear tire Dunlop D402, tire number MU85B16SW (the "tire") (Docket No. 119, Def. Statement ¶ 4).  Plaintiff Diana Griffith was a passenger riding the motorcycle (id. ¶ 5).  The accident occurred on Interstate 5 in Colusia County, California (id. ¶ 6).  Plaintiffs allege that the tire was defective, it failed, and that failure caused their motorcycle accident (id. ¶ 7).

Defendant described simply plaintiffs' causes of action, but plaintiffs responded with more detailed assertions of their claims (compare id. ¶¶ 8-13 with Docket No. 121, Pls. Response to Def. Statement ¶¶ 8-13).  For example, defendant argues that plaintiffs alleged, in the first cause of action, design defect and negligent design (Docket No. 119, Def. Statement ¶ 8) for both plaintiffs (see Docket No. 1, Notice of Removal, Ex. A, state Complaint ¶¶ 9-14), but plaintiffs note they also alleged negligent manufacture of the tire, negligent inspection, and negligent testing resulting in an unsafe and defective tire being marketed and sold to the public generally and to plaintiffs specifically (Docket No. 121, Pls. Response to Def. Statement ¶ 8).  Plaintiffs next state that their second cause of action includes claims of negligent manufacture of the tire and its parts, negligent inspection, negligent and defective workmanship resulting in an unsafe and defective tire being placed into the stream of commerce to the public generally, and plaintiffs specifically (Docket No. 121, Pls. Response to Def. Statement ¶ 9), as well as the design defect and negligent design noted by defendant (Docket No. 119, Def. Statement ¶ 9) as to plaintiff Diana Griffith (Docket No. 1, Notice of Removal, Ex. A, Compl. ¶¶ 16-18).  The third and fourth causes of action alleged strict liability for manufacturing defect (Docket No. 121, Pls. Response to Def. Statement ¶¶ 10-11), as well as strict liability for design defect (Docket No. 119, Def.

Statement ¶¶ 10-11) as to Daniel Griffith for the third cause of action (Docket No. 1, Notice of

Removal, Ex. A, Compl. ¶¶ 20-22) and Diana Griffith for the fourth cause of action (id. ¶¶ 24-

26).  Plaintiffs state that the fifth and sixth causes of action alleged breach of warranty including

claims for both breach of express and implied warranty (as to Daniel Griffith in the fifth cause of

action, Docket No. 1, Notice of Removal, Ex. A, Compl. ¶¶ 28-30, and as to Diana Griffith in the

sixth cause of action, id., ¶¶ 32-34), but plaintiffs agree that the express warranty breach claim is

withdrawn (Docket No. 121, Pls. Response to Def. Statement ¶¶ 12-13; see Docket No. 119, Def.

Statement ¶¶ 12-13).

In their answers to Interrogatories, plaintiffs initially conceded that they were not

asserting a claim based upon design defect (Docket No. 119, Def. Statement ¶ 14).  In these

answers, plaintiffs also asserted claims for failure to warn (id. ¶ 15), with that claim as "the tire

was defective due to inadequate warning or instruction at the time of marketing because

[defendant] knew or, in the exercise of reasonable care, should have known about the risk that is

associated with the tire and defective manufacturing of the tire and failed to provide any warning

concerning this risk" (id. ¶ 16).  Plaintiffs supplemented this Interrogatory answer by claiming

that defendant failed to "properly provide warnings on the subject replacement D402 rear tire

including that the load carry capacities of the tire were not demonstrable and/or particular in that

to the extent that there were any advises [sic], they failed to inform plaintiff's [sic] and account

for and calculate the vehicle gross weight, multiple tires and weight distribution" (id. ¶ 17).

They further supplemented this answer by stating that defendant failed to warn on the

replacement D402 tire "of load carrying capacities of the tire; that any weight recommendations

were inadequate in that they did not advise nor warn relative to the vehicle gross weight,

multiple tires and weight distribution.  Upon information and belief, there is nothing provided by [defendant] that would have given any clear indication of the weight limit for the D402 tire on this particular Harley Davidson motorcycle" (id. ¶ 18).

Plaintiffs purchased the tire as a replacement tire on October 14, 2007 (id. ¶ 19).  The parties dispute whether maintenance documentation was provided to plaintiffs when they purchased the tire (compare id. ¶ 20 (tire would have been provided with maintenance literature), Ex. G with Docket No. 121, Pls. Response to Def. Statement ¶¶ 20 (from their deposition testimony, plaintiffs did not receive any documentation), 21).  Defendant claims that the "Maintenance and Tire Care Booklet" (Docket No. 119, Ex. G) warned of the maximum load capacity for the tire (Docket No. 119, Def. Statement ¶ 21; but see Docket No. 121, Pls. Response to Def. Statement ¶ 21 (deny receiving this material)).  The sidewall of the tire was marked with warnings and instructions (Docket No. 129, Def. Statement ¶ 22).  The owner's manual for the Harley Davidson also included instructions and warnings concerning the gross vehicle weight rating and tire inflation pressure (id. ¶ 23); but plaintiffs claim that the original owner's manual for the motorcycle was not recoverable (Docket No. 121, Pls. Response to Def. Statement ¶ 23).  Defendant argues that plaintiffs fail to identify a specific warning that should have been issued (Docket No. 119, Def. Statement ¶ 24), but plaintiffs argue that, due to the high number of D402 tire blow-outs, warnings should have been given to defendant's customers, suppliers and distributors concerning a possible manufacturing/design defect associated with that tire (Docket No. 121, Pls. Response to Def. Statement ¶ 24).  Plaintiffs also alleged that there was no information provided by defendant which would have given any clear indication of the weight limit for the D402 tire (id.).

Applying California law to plaintiffs' claims, this Court recommended that judgment should be granted to defendant on plaintiffs' design defect claim because plaintiffs failed to provide evidentiary support for that claim (Docket No. 132, Report & Rec. at 13-15).  The Report also recommended that defendant should be granted summary judgment dismissing plaintiffs' failure to warn claim because it was only based on general Interrogatory answers that defendant's warning was deficient (id. at 15)[3].  As noted above, Judge Skretny set aside this recommendation to allow plaintiffs (as the plaintiffs in Blundon) to conduct discovery on the design defect claim (Docket No. 139).  Judge Skretny dismissed as abandoned plaintiffs' claims for breach of express warranty and loss of household services (id.; see Docket No. 132, Report at 16).

The parties then were given until March 25, 2016, to complete discovery on the design defect claim and renewed motions by June 10, 2016 (Docket No. 142; see Docket No. 140).

*Defendant's Second Motion for Summary Judgment*

Defendant now moves for summary judgment dismissing plaintiffs' design defect and failure to warn claims (Docket No. 144).  Defendant reiterates that plaintiffs fail to allege a design defect claim, that they have not produced evidence of a design defect in the subject tire (Docket No. 144, Def. Memo. at 11-16).  Defendant argues that adequate warnings were given to plaintiffs (id. at 20-22).

---

[3]The Report noted that, assuming adoption in its entirety, plaintiffs would have remaining their claims for breach of implied warrant (the fifth and sixth causes of action), manufacturing defect (the second cause of action), and strict liability claims for manufacturing defect (in the third and fourth causes of action), Docket No. 132, Report at 16.  In setting aside this Report, Docket No. 139, Order, Judge Skretny did not comment on the viability of these claims.

According to defendant's second Supplemental Statement of Facts (Docket No. 144), on February 24, 2016, plaintiffs submitted responses to defendant's Interrogatories regarding a design defect claim (id. ¶ 6, Ex. B), contending that the adhesive used, the calendaring, the rubber formation and application, and the construction of the tire were negligently and defectively designed (id. ¶ 7, Ex. B, at 2), that the adhesive itself was defectively designed and/or the insufficient amount of adhesive was used and that defendant "defectively designed the tire using insufficient or inferior dipping on the polyester cords" (id. ¶ 8, Ex. B, at 2).  Plaintiffs then opined that "new and newer tires could have been designed for higher psi capabilities such as 50 psi inflation" further increasing load capacity (id. ¶ 9, Ex. B at 3).

Defendant deposed plaintiff's expert, Gary Derian, on the design defect and failure to warn claims (id. ¶ 10, Ex. C).  Derian does not consider specific legal theories when examining tires during the course of a lawsuit, "rather, he examines the physical and documentary evidence that is available to him and reports his findings based on his analysis of the evidence" (id. ¶ 11, Ex. C, Tr. at 35).  If he detects a defect in a tire he examines, Derian reports that fact to whoever hires him (id. ¶ 12, Ex. C, Tr. at 37).

Derian had examined the subject rear tire in April 2014 and swore an affidavit in 2015 that there was no claim for design defect with this conclusion arising from his examination of the subject tire (id. ¶ 13; Docket No. 121, Pl. Expert Aff. ¶ 3).  But (as Derian states prior to this conclusion) this conclusion was based on Derian's "understanding that Plaintiffs have taken the position all along that this is strict liability **manufacturing defect**" case (Docket No. 121, Pl. Expert Aff. ¶ 3, emphasis in original).  After defendant's first motion for summary judgment that reopened the question about a design defect claim, Derian did not re-examine the tire, or inspect

the motorcycle or interview witnesses (Docket No. 144, Def. Supp'al Statement ¶¶ 14-15).

Derian states that he never designed a motorcycle tire (id. ¶ 16, Ex. C, Tr. at 22) and did not

suggest an alternative design for defendant's tire (Docket No. 144, Def. Supp'al Statement ¶ 17).

Instead, during a deposition on May 6, 2016, Derian testified that the tire could have been

designed to provide a higher psi capacity, that he examined a competitor's tire (Pirelli Metzeler)

that was designed for 50 psi capacity (while the subject tire was designed for only 40 psi) (id. ¶

17, Ex. C, Tr. at 23).   Derian opined that a higher psi capability would have allowed the tire to

withstand an increased load capacity but he made this opinion without documentation, basing it

only on a formula he applied to data acquired from the Tire and Rim Association Publication (id.

¶¶ 18-19, Ex. C, Tr. at 16-21).   Defendant counters that the tires Derian identifies from Metzeler

were not designed for use at 50 psi, but Metzeler manufactures motorcycle tires with a maximum

psi of only 40 psi (id.¶ 19, Ex. E), with Metzeler using metric measures rather than psi (id. ¶ 19,

n.2).   Defendant also claims that Derian did not use the formula in the manner generally accepted

in the industry, instead he reverse engineered his own formula (id. ¶ 20, Ex. C, Tr. at 19, 20).

Defendant faults Derian for not describing changes to the subject tire that would accommodate

higher air pressure (id. ¶ 21).   Using Derian's approach, he testified that at 40 psi the subject tire

was designed and tested for a maximum load of 1,100 pounds, a 20-25% overload (id. ¶ 22,

Ex. C, Tr. at 50), while at the time of the accident, Derian opined that the tire was overloaded by

12% (id. ¶ 23, Ex. C, Tr. at 50).   Defendant concludes that from Derian's own opinion, "the

design of the subject tire was sufficient to handle this minimal overload at the time of the

accident" (id. ¶ 24).

Derian then concluded "that any defect with the adhesive dip applied to the polyester cords of the tire would have constituted a <u>manufacturing defect</u>, and not a design defect" (<u>id.</u> ¶ 25, emphasis added).  Derian admitted he never witnessed the adhesive dip process and could not testify to the defect in the design of the dip process (<u>id.</u> ¶ 26).

As for the failure to warn claim, defendant points out that Derian did not know how a warning should have been formatted and, acknowledging that the subject tire was compatible with different models of Harley Davidson motorcycles, claimed that defendant should have made specific warnings for each Harley model for that tire (<u>id.</u> ¶¶ 29, 27-28, <u>see</u> <u>id.</u> ¶ 30 (Derian did not conduct a feasibility study of the type of warnings he recommended)).

Plaintiffs admit many of the facts stated in defendant's Supplemental Statement of Facts, and qualified or denied others (<u>see</u> Docket No. 147, Pls.' Response to Def. Statement).  For example, plaintiffs dispute defense characterization of Derian's view about legal theories; Derian testified that he does not work to a theory he develops a theory from the facts (<u>id.</u> ¶ 11).  They also deny that Derian did not provide documentation to support his higher psi contention or that Metzeler manufactures a tire that can sustain 50 psi (<u>id.</u> ¶ 19).  They deny that Derian did not describe changes to the subject tire to accommodate higher pressure, rather he testified that the tire could withstand 50 psi without any design change or with a slightly thicker belt cord or use "a little bit stronger fiberglass belt cord" or that an additional belt ply or additional carcass ply or a belt overlay could have been used (<u>id.</u> ¶ 21; Docket No. 144, Derian Tr. at 58-59, 59).  As for formatting a warning, plaintiffs deny defendant's characterization, arguing that Derian said that the warning "needs to instruct the consumer about the risks of overloading and how to prevent it" with Derian not thinking "the warning should require the consumer to do math," and that the

warning should present in some fashion a table or guide (Docket No. 147, Pls.' Response to Def.

Statement ¶ 29; Docket No. 144, Derian Tr. at 77).  Plaintiffs add that the subject tire's label did

not advise the consumer of how much weight could be put on the motorcycle (Docket No. 147,

Pls. Response to Def. Statement, Pls.' Additional Statement of Material Fact ¶ 1).  They contend

that defendant set up inspection booths at motorcycle rallies and collected information on tire use

and weighing bikes and riders (id., Pls.' Additional Statement ¶ 2).  The Harley Davidson D402

tire was not tested at operation at 50 psi (id., Pls.' Additional Statement ¶ 4).

Defendant now argues that Derian's opinion about a higher psi tire is inadmissible since

his methodology is not reliable under Daubert v. Merrill Dow Pharmaceuticals, 509 U.S. 579

(1993) (Docket No. 144, Def. Memo. at 16-18).  Also, defendant faults Derian in his opinion

about other sources for defect, such as the design of the adhesive dip process (id. at 18-19).

As for the failure to warn claim, defendant argues that it provided an adequate warning

for under-inflation and over-deflection (id. at 20-22).  Plaintiffs, further, had not produced

evidence of how the proximate cause of failure to warn led to their injuries (id. at 22-24).  Derian

conceded that the accident was not caused by the tire being overloaded (Docket No. 122, Def.

Atty. Decl., Ex. C, Tr. at 79), hence an overload warning would not be a proximate cause

(Docket No. 144, Def. Memo. at 23).  Finally, defendant argues that the failure to warn claim

duplicates plaintiffs' manufacturing defect claims (id. at 24-25) not being challenged in the

pending motion.

Plaintiffs counter that defendant fails to establish that there was no material issue of fact

for granting it summary judgment (Docket No. 147, Pls. Memo. at 2).  As for design defect,

plaintiffs apply California's consumer expectation test, Lucas v. City of Visalia, 726 F. Supp. 2d

1149, 1154 (E.D. Cal. 2010) (id. at 4), and assert that they provided evidence that the tire failed

to perform as safely as consumers would expect (id. at 5).  They respond that they sustained their

burden for a failure to warn claim, again under California law (id. at 9-16).

Defendant replies that plaintiffs have not explained the contradiction in Derian's

testimony denying a design defect claim in his earlier affidavit and plaintiffs' present design

defect claim (Docket No. 148, Def. Reply Memo. at 1-2).  Defendant also argues that the

consumer expectations test for design defect does not apply here since plaintiffs have yet to

establish a defect that caused their injuries (id. at 5) or because that standard applies only for

everyday experience of the user indicating that the design violates minimum safety assumptions

(id. at 5-6), Pruitt v. General Motors Corp., 72 Cal. App. 4th 1480, 1483, 86 Cal. Rptr. 2d 4, 6

(Cal. Ct. App. 1999).  That test does not apply if the theory of defect is one of technical and

mechanical detail (id. at 6), Soule v. General Motors Corp., 8 Cal. 4th 548, 570, 882 P.2d 298

(1994).  Defendant also argues that plaintiffs have not shown an issue of fact to sustain their

failure to warn claim or that plaintiffs' injuries were proximately caused by a failure to warn (id.

at 8-10).

## DISCUSSION

I.      Summary Judgment Standards and Applicable Substantive Law

A.      Summary Judgment

As previously noted in this case (Docket No. 132, Report at 9-11), summary judgment is

appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law.  Ford v. Reynolds, 316 F.3d 351, 354

(2d Cir. 2003); Fed. R. Civ. P. 56(a) (effective Dec. 2010).  The party seeking summary

judgment has the burden to demonstrate that no genuine issue of material fact exists.  In

determining whether a genuine issue of material fact exists, a court must examine the evidence in

the light most favorable to, and draw all inferences in favor of, the non-movant. Ford, supra,

316 F.3d at 354.  "A dispute regarding a material fact is genuine 'if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.'" Lazard Freres & Co. v.

Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby,

477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997).  While the moving party must

demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317,

323 (1986), the party against whom summary judgment is sought, however, "must do more than

simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving

party must come forward with specific facts showing that there is a genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in

original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002);

Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002); see also Demutis v. Sally

Beauty Supply LLC, No. 09CV92, 2011 WL 1198197, at *3 (W.D.N.Y. Feb. 17, 2011) (Scott,

Mag. J.) (Docket No. 119, Def. Memo. at 2-3).  The opponent to summary judgment may argue

that he cannot respond to the motion where it shows, by affidavit, "that, for specified reasons, it

cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d).

    The Local Civil Rules of this Court require that movant and opponent each submit "a

separate, short, and concise" statement of material facts, and if movant fails to submit such a

statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2)

(effective Jan. 1, 2011).  The movant is to submit facts in which there is no genuine issue, <u>id.</u>

R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is

contended that there exists a genuine issue to be tried, <u>id.</u> R. 56(a)(2).  Each numbered paragraph

in the movant's statement will be deemed admitted unless specifically controverted by a

correspondingly numbered paragraph in the opponent's statement, <u>id.</u>  Each statement of material

fact is to contain citations to admissible evidence to support the factual statements and all cited

authority is to be separately submitted as an appendix to that statement, <u>id.</u> R. 56(a)(3).

      B.     Choice of Law

As previously held (Docket No. 132, Report at 11-12), California substantive law applies

to plaintiffs' claims.

      C.     California Substantive Law:  Design Defect and Failure to Warn

California law recognizes strict liability for three types of product defects:  manufacturing

defects, design defects, and warning defects, <u>Anderson v. Owens-Coring Fiberglass Co.</u>,

53 Cal. 3d 987, 995, 810 P.2d 549 (1991); <u>Altman v. HO Sports Co.</u>, CIV. No. 1:09-1000 AWI

SMS, 2009 WL 4163512, at *6 (E.D. Cal. Nov. 23, 2009).

      1.     Design Defect

Under a design defect theory,

> "a design is defective in one of two ways.  First, under the 'consumer expectations test,' a product's design is defective if it has failed to perform as safely as its ordinary consumers would expect when used in an intended or reasonably foreseeable manner.  <u>Barker v. Lull Engineering Co.</u>, 20 Cal. 3d 413, 430, . . . 573 P.2d 443 (1978); <u>Karlsson [v. Ford Motor Co.</u>, 140 Cal. App. 4th 1202, 1208, 45 Cal. Rptr. 265 (2006)]; <u>see also</u> <u>Soule [v. General Motors Corp.</u>, 8 Cal. 4th 548, 562, 882 P.2d 298 (1994)].  Second, under the 'risk-benefit test,' a product's design is defective if the design embodies 'excessive preventable danger,' that is, the risk of danger inherent in the design outweighs the benefits of such design.

> Barker, 20 Cal.3d at 430,  . . . 573 P.2d 443; Ford v. Polaris Industries, Inc.,
> 139 Cal. App. 4th 755, 766 (2006) . . . ,"

Lucas, supra, 726 F. Supp. 2d at 1154 (some citations omitted).  Plaintiffs apply the consumer

expectations test (Docket No. 147, Pls. Memo. at 4).  They need to provide evidence of their use

of the product; circumstances surrounding the injury; and "the objective features of the product

which are relevant to an evaluation of its safety," Mariscal v. Graco, Inc., 52 F. Supp. 3d 973,

985 (N.D. Cal. 2014) (quoting, in turn, Campbell v. General Motors Corp., 32 Cal. 3d 112, 127,

649 P.2d 224 (1982)).

The consumer expectations test applies "in cases in which the everyday experience of the

product's users permits a conclusion that the product's design violated minimum safety

assumptions, and is thus defective regardless of expert opinion about the merits of the design.  In

contrast, the test should not be used when the ultimate issue of design defect calls for a careful

assessment of feasibility, practicality, risk, and benefit, since in many instances it is simply

impossible to eliminate the balancing or weighing of competing considerations in determining

whether a product is defectively designed or not," Lucas, supra, 726 F. Supp. 2d at 1154 (quoting

Jones v. John Crane, Inc., 132 Cal. App. 4th 990, 1002, 35 Cal. Rptr. 3d 144 (Cal. Ct. App. 2005)

(quotations and citations omitted)).  Where the minimum safety of a product is within the

common knowledge of a jury, "expert witnesses may not be used to demonstrate what an

ordinary consumer would or should expect," Pruitt, supra, 72 Cal. App. 4th at 1483, 86 Cal. Rptr.

2d at 6.

California law recognizes two other types of strict liability for product defects, those from

manufacturing defects and warning defects, Lucas, supra, 726 F. Supp. 2d at 1154; Anderson v.

Owens-Coring Fiberglas Co., 53 Cal. 3d 987, 995, 810 P.2d 549 (1991); Karlsson v. Ford Motor

<u>Co.</u>, 140 Cal. App. 4th 1202, 1208, 145 Cal. Rptr. 3d 265 (Cal. Ct. App. 2006), where the

manufacture defect differs from the manufacturer's intended result, <u>Lucas</u>, <u>supra</u>, 726 F. Supp.

2d at 1154-55 (quoting <u>Barker v. Lull Eng'g Co.</u>, 20 Cal. 3d 413, 429, 573 P.3d 443 (1978)).

California law distinguishes between a design defect and a manufacturing defect.  "A

manufacturing defect exists when an item is produced in a substandard condition.  Such a defect

is often demonstrated by showing the product performed differently from other ostensibly

identical units of the same product line," <u>McCabe v. American Honda Motor Co.</u>, 100 Cal. App.

4th 1111, 1120, 123 Cal. Rptr. 2d 303, 309 (Cal. Ct. App. 2002) (citations omitted).  "The

manufacturing defect theory posits that a suitable design is in place, but that the manufacturing

process has in some way deviated from that design, <u>Fontalvo v. Sikorsky Aircraft Corp.</u>,

No. 13cv0331-GPC-KSC, 2013 U.S. Dist. LEXIS 116052, at *8-9 (S.D. Cal. Aug. 15, 2013)

(citing <u>Lucas</u>, <u>supra</u>, 726 F. Supp. 2d at 1155).  A design defect "exists when the product is built

in accordance with its intended specifications, but the design itself is inherently defective,"

<u>McCabe</u>, <u>supra</u>, 100 Cal App. 4th at 1120, 123 Cal. Rptr. 2d at 309 (citation omitted).

2.     Failure to Warn

Under California law, "a plaintiff must allege 'that a manufacturer or distributor did not

warn of a particular risk for reasons which fell below the accepted standard of care,'" <u>Mountain</u>

<u>Club Owner's Ass'n v. Graybar Elec. Co.</u>, No. CIV 2:13-1835 WBS K, 2014 WL 130767, at *3

(E.D. Cal. Jan. 14, 2014), quoting <u>Carlin v. Superior Court</u>, 13 Cal. 4th 1104, 1112, 920 P.2d

1347 (1996).  "To state a plausible claim for failure to warn, a complaint should at least identify

which danger was not warned against, that the danger was substantial, that the danger was not

readily recognizable to an ordinary customer, that the manufacturer knew or should have

15

reasonably known of the danger, and causation," Altman, supra, 2009 WL 4163512, at *9;

Mountain Club, supra, 2014 WL 130767, at *3.  The failure to warn must be a substantial factor

in causing plaintiff's injury, Huitt v. S. California Gas Co., 188 Cal. App. 4th 1586, 1604,

116 Cal. Rptr. 3d 453, 468 (Cal Ct. App. 2010) (Docket No. 144, Def. Memo. at 22-23); see

Lord v. Smithkline Beecham Corp., No. B192452, 2007 WL 4418019, at *3 (Cal. Ct. App.

Dec. 19, 2007) (id. at 20).

II.     Application

     A.     Design Defect

Putting to one side defendant's initial argument (see Docket No. 119, Def. Memo. at 3)

that plaintiffs' position was bound by the declaration of their expert denying that they were

asserting a design defect (since Mr. Derian prefaced that affidavit with his understanding that

plaintiffs' position had been on strict liability manufacturing defect (Docket No 121, Derian

Expert Aff. ¶ 3)), plaintiffs still have not produced evidence to support a design defect claim

even after further discovery on this point.  They rely upon the expert opinion of Derian, who

essentially opines that defendant could have made a motorcycle tire that could bear up to 50 psi

or could have manufactured the tire with a different adhesive process and, by failing to do so

here, was negligent.

Plaintiffs at one point argue that their expert, Mr. Derian, stated that "it is certainly

possible that this tire [at issue] could withstand 50 pound per square inch without any design

change" (Docket No. 144, Pls. Atty. Decl. Ex. C, Tr. at 58-59).  But their present claim is that the

subject tire was designed not to withstand up to 50 psi, hence causing the accident.

Under <u>Campbell</u>, <u>supra</u>, 32 Cal. 3d at 127, 649 P.2d 224, plaintiffs have presented their use of the tire and the circumstances surrounding the injury. The remaining element is the objective features of the tire that are relevant to the evaluation of its safety. Plaintiffs point to the psi it was designed to withstand, questioning in answers to defendant's supplemental Interrogatories what is meant by "objective features" and contending that the tire should have never deflated, the bonding on the tire cords should not have separated (Docket No. 144, Def. Atty. Decl., Ex. B, Pls. Answers to Interrog. at 3). The integrity of the tire and its inflation, the tire itself, and their affidavits (<u>cf.</u> Docket No. 147, Pls. Memo. at 5) by themselves are not sufficient proof of the "objective features of the product which are relevant to an evaluation of its safety," <u>id.</u> at 127, 126, 184 Cal. Rptr. 891, 649 P.2d 224 (plaintiff's evidence of her testimony and pictures of the allegedly defective bus was found to be sufficient to establish the objective condition of the product).

The application of California's consumer expectations test assumes that the defect is so obvious to the lay person that expert testimony identifying the defect is unnecessary, <u>see</u> <u>Pruitt</u>, <u>supra</u>, 72 Cal. App. 4th at 1483, 86 Cal. Rptr. 2d at 6. Whether the tire was properly inflated or inflated to the optimal degree for the heaviest load possible are beyond the ken of the average person, hence the consumer expectations test is not applicable. Plaintiffs' invocation of expert testimony belie their contention that an ordinary consumer could tell that defendant's tire was defective. Here, plaintiffs' design defect theory rests solely upon the deflation of the tire and their expert's testimony about other designs that could have borne more pressure or a greater load.

Other theories of strict liability might apply here (as will be discussed in regards to failure to warn). Their contention is more a claim under manufacturing defect, which defendant is not currently challenging in this motion for partial summary judgment (Docket No. 147, Pls. Memo. at 17). As for plaintiffs' expert's claim that the design of the manufacturing process caused their injury (essentially, that the design of the manufacturing process did not call for enough adhesive on the cords causing the accident), plaintiffs present no evidence that defendant set forth the specifications for the amount of adhesive to be used as the design for the manufacturing process for the tire. Plaintiffs' expert did not testify as to the optimal amount of adhesive and admitted that he did not witness the dipping process (which occurred in Vietnam) and that he could not testify to the design of the manufacturing process (Docket No. 144, Def. Supp'al Statement ¶ 26, id., Def. Atty. Decl., Ex. C, Tr. at 111). Plaintiff argue that Derian testified that defendant failed to monitor the dipping process (Docket No. 147, Pls. Statement ¶ 26; Docket No. 144, Def. Atty. Decl., Ex. C, Tr. at 110-11), which he termed a manufacturing defect (Docket No. 144, Def. Atty. Decl., Ex. C, Tr. at 111). Derian stated that he did not have an opinion on the build specifications for the tire but concluded that "the process was defective, because it allowed the gap in the adhesive dip" (id., Tr. at 110).

It is not clear whether this tire was an aberration (hence a manufacturing defect) or the product of a defective design choice. All that is presented is the expert's speculation that there was insufficient adhesive and nothing more about the decision making process leading to that amount of adhesive used. The actual amount of adhesive applied is an example of a manufacturing defect claim.

Plaintiffs' claim under a design defect theory under California law should fail and defendant's motion (Docket No. 144) for summary judgment should be **granted**.

Given this recommendation, this Court need not address whether Mr. Derian's methodology in reaching his expert opinions were sufficiently reliable to raise issues of fact, cf. Daubert, supra, 509 U.S. 579; Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 311 (2d Cir. 2008). This Court, however, does note that "an expert's opinions that are without factual basis and are based on speculation or conjecture are similarly inappropriate material for consideration on a motion for summary judgment," id.; see Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997) ("[a]n expert's report is not a talisman against summary judgment"). As a motion for summary judgment, the movants and opponents need to present evidence in admissible form to support or dispute a fact, Fed. R. Civ. P. 56(c)(2) (2016) (emphasis supplied). "Only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment," Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 264 (2d Cir. 2009); Buckley v. Deloitte & Touche USA LLP, 541 Fed. App'x 62, 63 (2d Cir. 2013) (slip op.). Here, this Court finds that plaintiffs fail to supply sufficient evidence to establish a design defect claim under California law without the use of an expert under California's consumer expectations standard. Thus, the expert's methodology need not be addressed where the consumer expectations standard does not require the use of expert testimony at all, Pruitt, supra, 72 Cal. App. 4th at 1483, 86 Cal. Rptr. at 6.

B.      Failure to Warn

Defendant argues that plaintiffs concede that a warning was placed on the subject tire (Docket No. 144, Def. Memo. at 20). Since its tires are used on different models of Harley

Davidson motorcycles, defendant concludes that "there was no way for GDTNA [defendant] to know specifically what Harley Davidson model the subject tire would be placed on after it left GDTNA's hands" (id. at 21) to draft a warning specific for the motorcycle the tire might be placed on.  This is especially true for a replacement tire that could be installed on a number of Harley models.  This Court initially recommended dismissing this claim based on the sufficiency of evidence presented from plaintiffs' expert Interrogatory answer (see Docket No. 132, Report & Rec. at 15; cf. Docket No. 139, Order).

After supplemental discovery, defendant raises several grounds for dismissing a failure to warn claim (e.g., Docket No. 129, Def. Further Memo. at 2-3; Docket No. 144, Def. Memo. at 20-25):  plaintiffs have not set forth the specific warning required; the claim duplicates their manufacturing defect claim; plaintiffs do not contest the warnings given by defendant; failure to plead the claim; and plaintiffs have not proven proximate causation of their injuries from the warning provided.  Focusing on the warnings given by defendant (Docket No. 119, Def. Atty. Decl., Ex. G) (as well as those given by Harley Davidson, id., Ex. H), as a matter of law these warnings were sufficient to provide adequate warning that the tire was not to be overloaded. Three documents conveyed the warnings to the rider:  the Maintenance and Tire Care Booklet (id. Ex. G), the sidewall of the tire itself, and the Harley Davidson owner's manual (id., Ex. H). Combined, they warn the consumer to not exceed the maximum load or maximum pressure on the tire, while the Harley Davidson manual indicated the load carry capabilities, gross vehicle weight rating, and optimal tire pressure (see, e.g., Docket No. 119, Def. Memo. at 6-9).  The subject tire could have been used by different Harley models; plaintiffs' expert conceding that "a few different bikes in the Harley brand" could use the tire, the "big cruisers" (Docket No. 147,

Pls. Response to Supp'al Statement ¶ 27; Docket No. 144, Def. Atty. Decl., Ex. C, Tr. at 73),

adding that defendant should have made a warning for the maximum gross weight for the

specific range of cruiser models made by Harley (Docket No. 144, Def. Atty. Decl., Ex. C, Tr. at

74).  Plaintiffs' expert then conceded that he had not done a feasibility study of such a warning

(id. at 75-76).

Plaintiffs, anticipating an "overdeflection and underinflation defense," assert the failure

to warn claim arguing that "there is nothing provided by [defendant] that would have given any

clear indication of the weight limit for the D402 tire on this particular Harley Davidson

motorcycle [the subject tire]" (Docket No. 147, Pls. Memo. at 9-10, quoting Docket No. 119,

Def. Atty. Decl., Ex. F, Pls. 2d Supp'al Responses to Interrogs., at page 53 of 59).  But defendant

(with Harley Davidson) did provide such an indication.  The sidewall of the tire gave the

maximum load (908 pounds) and the maximum air pressure (40 psi) for that tire, while the

Harley manual gave the load carry capabilities of the motorcycle using that type of tire.  Finally,

the maintenance and tire care booklet for that replacement tire advised not exceeding the vehicle

load capacity found on the tire sidewall, and the appropriate pressure depending upon "light to

medium loads" or "dual riding and other loads" (recommending 40 psi for the latter scenario)

(see Docket No. 119, Def. Memo. at 6-7).  While the subject tire was not generic (see Docket

No. 147, Pls. Memo. at 14), it was specific to a number of Harley Davidson models, a fact not

disputed by plaintiffs.  As a claim, plaintiffs bear the burden of proving the elements of their

claim, see Randy's Trucking, Inc. v. State Dep't of Transp., No. F065447, 2014 WL 795974, at

*8-9 (Cal. Ct. App. Feb. 28, 2014) (Docket No. 144, Def. Memo. at 25).

Plaintiffs argue that the sufficiency of the warning is a fact issue (e.g., id. at 15, citing Urena v. Biro Mfg. Co., 114 F.3d 359, 366 (2d Cir. 1997)).  The Second Circuit in Urena, applied New York State strict product liability law in holding that the adequacy of the warning was a fact question, 114 F.3d at 366 (citing, e.g., Beyrle v. Finneron, 199 A.D.2d 1022, 1023, 606 N.Y.S.2d 465, 466 (4th Dep't 1993)).  Similarly, California law recognizes the adequacy of a warning is usually a question for the jury, Mariscal, supra, 52 F. Supp. 2d at 988-89 (applying California law, see id. at 979, denying defense motion for summary judgment); Torres v. Xomox Corp., 49 Cal. App. 4th 1, 21, 56 Cal. Rptr. 2d 455, 468 (Cal. Ct. App. 1996); Huynh v. Ingersoll-Rand, 16 Cal. App. 4th 825, 833-35, 20 Cal. Rptr. 2d 296, 300-01 (Cal. Ct. App. 1993) (close factual issue as to adequacy of warning on grinder and disc, reversing summary judgment).  Thus, this Court cannot evaluate the adequacy of the warnings given here by defendant (and by extension Harley Davidson), that issue is one for a jury to resolve.

Plaintiffs, however, fail to provide evidence showing that the degree of warning furnished by defendant caused their injuries, a key element for their failure to warn claim under California law (Docket No. 144, Def. Memo. at 22-23), Salinas Energy Corp. v. Am. Pipe & Tubing, Inc., No. F063636, 2013 WL 1192410, at *9 (Cal. Ct. App. Mar. 25, 2013); Huitt, supra, 188 Cal. App. 4th at 1604, 116 Cal. Rptr. 3d at 468 (id.).  The warnings were about the maximum load or maximum pressure for the tire but plaintiffs' expert testified that the loads did not cause the tires to fail (id.; Docket No. 144, Def. Atty. Decl. Ex. C, Tr. at 79).  California law requires the failure to warn to be a substantial factor in causing injury, Huitt, supra, 188 Cal. App. 4th at 1604, 116 Cal. Rptr. 3d at 468, and plaintiffs have not established that their injuries were substantially due to the inadequate warnings provided in the maintenance manual, the tire sidewall, and

Harley Davidson's owner's manual.  Plaintiffs seek warnings that would have told them the consequences if the tire was overloaded or over pressurized and the load that each individual tire could bear (see Docket No. 147, Pls. Memo. at 11-12).  They also claim that they did not receive warnings at the point of sale (Docket No. 147, Pls. Memo. at 14; Docket No. 121, Pls. Atty. Decl. Ex. A, Pls. Tr. at 16-17), although they produced copies of the maintenance and tire care log (Docket No 119, Def. Atty. Decl. Ex. G) as part of their document production.

Thus, plaintiffs' failure to warn claim (although raising an issue of material fact regarding the adequacy of warnings given) nevertheless **should be dismissed** and defendant's motion for summary judgment on this claim **should be granted**.  Given this recommendation, the Court need not address defendant's alternative grounds that the failure to warn claim duplicates their existing manufacturing defect claim, that plaintiffs failed to plead the failure to warn claim or that plaintiffs did not propose the warning that should have been given.

III.    As a Result

If this Report is adopted, plaintiffs' design defect claims and their warning claim would be dismissed.  What would remain (as remained after the first defense motion for summary judgment, see n.3 supra) are plaintiffs' claims for breach of implied warranty (the fifth and sixth causes of action); manufacturing defect (the second cause of action); and strict liability for manufacturing defect (third and fourth causes of action).

**CONCLUSION**

Based upon the above, it is recommended that defendant's motion for partial summary judgment dismissing plaintiffs' design defect **as to this claim** and failure to warn **as to this claim** causes of action (Docket No. 144) be **granted**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be

supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

_/s/ Hugh B. Scott_
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
September 21, 2016

25